# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

**ANTONIO DEWAYNE HOOKS,**           )
                                      )
                Plaintiff,          )
                                      )
v.                                    )   **No. CIV 18-399-RAW-SPS**
                                      )
**BRYAN YANDELL,**                    )
                                      )
                Defendant.          )

## OPINION AND ORDER

Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Center (DCF) in Holdenville, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at DCF. The remaining defendant is Bryan Yandell, the DCF contract monitor.[1] The Court has before it for consideration Plaintiff's complaint (Dkt. 1), a special report prepared by DCF Officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 30), Defendant Yandell's motion to dismiss (Dkt. 31), and Plaintiff's responses to the motion (Dkts. 31, 35).

**Plaintiff's Allegations**

Plaintiff alleges he was the victim in Case No. CF-16-8322, and he expected that the perpetrators in that case would have separatees placed upon them in prison.[2] When Plaintiff entered DOC custody at North Fork Correctional Center (NFCC) in 2017, however, he saw

---

[1] Defendant Justin Glaspy was dismissed without prejudice on May 14, 2019 (Dkt. 19), and Defendant Hill was dismissed without prejudice on October 28, 2019 (Dkt. 25). Plaintiff was unable to locate and serve these defendants.

[2] According to the Oklahoma State Courts Network at www.oscn.net, Oklahoma County District Court Case No. CF-2016-8322 involved the criminal convictions of Anthony Durham, Dewayne Smith, and one other defendant.

Anthony Durham, one of the perpetrators, walking in the prison yard. After plaintiff and Durham had a fight, Plaintiff reported it to the courts and to NFCC Deputy Warden Hill. In response to the report, Hill placed Plaintiff in segregation and placed a separatee on Anthony Durham. The other defendants in Case No. CF-16-8322, however, were not given separatees.

Plaintiff was transferred to DCF in February 2018, and on April 11, 2018, he learned he was being housed with Dewayne Smith, who was another defendant in Case No. CF-16-8322. Plaintiff reported the situation to DCF Case Manager Justin Glaspy who placed Plaintiff in segregation for safety, but then raised Plaintiff's security level by making a maximum security transfer packet which Defendant Yandell approved.

In Count I of the complaint, Plaintiff alleges he suffered emotional distress when Deputy Warden Hill did not place separatees on all the defendants from Case No. CF-16-8322, and Justin Glaspy instead transferred Plaintiff to DCF where another defendant from Case No. CF-16-8322 was housed. Plaintiff was placed in segregation for his safety and was processed as a maximum security transfer rather than a medium lateral transfer.

In Count II, Plaintiff alleges he was denied due process when Justin Glaspy did not give him a medium lateral transfer. Plaintiff asserts he not placed in segregation as a disciplinary measure; instead, he was placed in segregation for his safety. Therefore, Deputy Warden Hill should have placed all the defendants from Case No. CF-16-8322 on segregation when the circumstances were reported in December 2017. Plaintiff also complains that Glaspy "skipped over" a mandatory override and that transfers are not grievable issues.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendants' motion.

**Exhaustion of Administrative Remedies**

Defendant Yandell alleges, among other things, that Plaintiff has failed to exhaust the

administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

**Discussion**

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), personal

identity ARA, or Medical ARA, whichever is appropriate. The administrative process is exhausted only after all of these steps have been taken. (DOC OP-090124; Dkt. 31-1 at 7-16).

This policy also instructs that if the inmate does not follow directions as explained in the policy provision and on the grievance forms, the grievance may be returned to him unanswered for proper completion. If the inmate is allowed to resubmit the grievance, he must properly resubmit the grievance within ten (10) calendar days of receipt. *Id.* at 10. The continued failure to follow instructions may result in restrictions being imposed on the inmate. *Id.* at 18.

Terry Underwood, the DCF Grievance Coordinator, states by affidavit that he has diligently searched the facility's grievance records and the grievance logs. The records show that Plaintiff submitted six grievances that raised issues of housing, classification, or transfer. All six of the grievances, however, were returned unanswered, and Plaintiff did not properly appeal any of the grievances to the DOC. (Dkt. 31-3 at 2-3). The six relevant grievances are set forth below:

**Grievance No. 2018-74:** The record shows that on April 2, 2018, Plaintiff submitted an RTS to his case manager, stating that his sentencing judge recommended that he be housed at Joseph Harp Correctional Center (JHCC) because of his injuries from Case No. CF-16-8322. Plaintiff requested a transfer to JHCC, so he could receive the correct treatment for his chronic pain. The RTS response stated that Plaintiff was not court-ordered to transfer, and medication concerns should go through medical services. (Dkt. 31-2 at 6).

On April 9, 2018, Plaintiff submitted an RTS to medical services, again stating his sentencing judge had recommended he be housed at JHCC because of his medical condition. The DOC, however, would not honor the recommendation. Plaintiff requested a medical

transfer to JHCC for treatment of his severe pain.  The response by the Health Services Administrator stated that a medical transfer was not warranted at that time.  (Dkt. 31-2 at 8).

Plaintiff submitted Grievance No. 2018-74 on April 9, 2018, requesting a transfer to JHCC as soon as possible, because the transportation with chains and handcuffs for his "med run" causes parts of his body to "go numb" (Dkt. 31-2 at 5).  The grievance was returned unanswered on April 30, 2018, because "Classification Movement requests to transfer to another facility are not grievable to the Oklahoma Department of Corrections."  (Dkt. 31-2 at 3-4).

**Grievance No. 2018-121:**  On April 18, 2018, Plaintiff submitted an RTS to the DCF Warden, stating the DOC had placed him in imminent danger because of his placement near the defendants from Case No. CF-16-8322.  He again asked to follow the judge's recommendation to house him at JHCC because of his medical condition and to avoid contact with the defendants from Case No. CF-16-8322.  The May 8, 2018, response stated that Case Manager Worsham would look into the issue.  (Dkt. 31-2 at 14).

On May 8, 2018, Plaintiff submitted another RTS to the case manager, asking about the status of his transfer.  The response stated that Plaintiff's transfer had been started, however, the recommendation was that the transfer would not occur because it was not court ordered.  (Dkt. 31-2 at 13).

Plaintiff submitted Grievance No. 2018-121 on May 15, 2018, stating that when he was housed at NFCC, a defendant from Case No. CF-16-8322 also had been placed there. When Plaintiff raised this issue, a separatee was placed only on Anthony Durham, and Plaintiff was moved to segregation.  Plaintiff then was moved to DCF where Dewayne Smith, one of the other defendants, also was incarcerated.  Plaintiff asserted he was about to sue everyone who had been involved in placing him where the defendants from Case No. CF-

16-8322 are housed. He further stated he had unaddressed medical needs and emotional damage from Case No. CF-16-8322. (Dkt. 31-2 at 12).

On May 24, 2018, Plaintiff refused to sign for the returned Grievance No. 2018-121, which had not been answered. The response stated that Plaintiff had not correctly completed the grievance form, and the grievance was not dated. In addition, because this matter was in litigation, the issues were not grievable. (Dkt. 31-2 at 10-11).

**Grievance No. 2018-209:** On August 14, 2018, Plaintiff submitted an RTS to the Warden, stating he wanted a lateral transfer from DCF medium security to another medium security prison, because a separatee had been placed on Inmate Dewayne Smith. Plaintiff claimed he should not be classified as maximum security, because he had not been in trouble. He asked to know who made the decision to place him on maximum security after the separatee was placed on Dewayne Smith. He further stated that if the situation was not fixed, he would be contacting this federal court for an injunction. The response to the RTS stated, "Your packet was approved by Dept. of Corrections per population due to your Custody Assessment points." (Dkt. 31-2 at 25).

Plaintiff also submitted an RTS to Defendant Yandell on August 14, 2018. It stated that although a lateral transfer packet was completed for his transfer to another medium security facility, he was sent to DCF maximum security. He again asked to know who made the decision to send him to maximum security. He claimed he deserved to be in a medium prison where he could walk freely, and his situation was a violation of the Eighth Amendment. He requested a transfer to medium as soon as possible. The same response was given to the RTS: "Your packet was approved by Dept. of Corrections per population due to your Custody Assessment points." (Dkt. 31-2 at 24).

Plaintiff filed Grievance No. 2018-209 on August 28, 2018, raising the same issues

7

as in the RTSs, but not requesting to know who had authorized his transfer to medium security. The grievance requested a transfer to medium as soon as possible and threatened a federal lawsuit. (Dkt. 31-2 at 23).

The grievance was returned unanswered on August 30, 2018, because (1) the RTS issue was not consistent with the issue in the grievance, (2) Plaintiff did not correctly complete the grievance on the correct form or in its entirety, (3) classification movement requests to transfer to another facility are not grievable to the DOC, and (4) only one issue or incident is allowed per grievance. The response further stated, "On RTS you requested to know who had authorized your transfer to maximum security and that you wanted to transfer ASAP. More than one issue. On the Grievance you wanted to transfer to a medium facility. Requests for transfers to another facility are not grievable to DOC." (Dkt. 31-2 at 21-22).

On September 17, 2018, Plaintiff resubmitted Grievance No. 2018-209 with an RTS to Defendant Yandell dated September 10, 2018. The RTS alleged Plaintiff was being punished for needing the transfer paperwork when he was a victim. Plaintiff asked for an explanation about why Yandell "didn't catch the fact that Mr. Glaspy was trying to raise me up in security for asking for separatee on a defendant from CF-16-8322." He stated he was the victim in the case, however, Mr. Glaspy skipped a section of the custody assessment scale. He further asserted he was about to sue CoreCivic and the DOC. The RTS response stated that Plaintiff was approved for maximum security because of his misconduct history. (Dkt. 31-2 at 18-19).

On October 8, 2018, Plaintiff refused to accept the response to the resubmitted Grievance No. 2018-209. The grievance was returned unanswered, because (1) the RTS issue was not consistent with the issue requested on the grievance, and (2) Classification

8

Movement requests to transfer to another facility are not grievable to the DOC. The grievance response further stated that because of Plaintiff's continued failure to submit a proper grievance, he was out of time. (Dkt. 31-2 at 16-17).

**Grievance No. 2018-0220:** On August 2, 2019, Plaintiff submitted an RTS to the DCF Warden, complaining that Case Manager Glaspy had made a maximum security transfer packet for him because of Plaintiff's placement of a separatee on Inmate Dewayne Smith. Plaintiff stated he was the victim in the criminal case, and Mr. Glaspy's actions violated the Eighth Amendment. Plaintiff requested that the warden confer with the DOC for a lateral medium security transfer. The RTS response stated that DOC had approved a maximum transfer for Plaintiff. (Dkt. 31-2 at 34).

Plaintiff filed Grievance No. 2018-220 on September 4, 2018, complaining that his RTS was addressed to the warden, but it was answered by the unit manager. The grievance asked that the staff stop forwarding his RTSs to other staff and require that the addressee answer the RTSs. Plaintiff also wanted DOC to be informed that the case manager had made a mistake, and he asked for a lateral medium transfer to be initiated as soon as possible. (Dkt. 31-2 at 33). On September 10, 2018, the grievance was returned unanswered, because it was a duplicate of Grievance No. 2018-209. (Dkt. 31-2 at 31-32).

Plaintiff resubmitted the grievance on September 14, 2018, with the same RTS. The grievance requested that he be reassessed without skipping over the mandatory override. He also requested a medium transfer. The resubmission was returned unanswered on September 27, 2018, with notations that (1) the RTS was not consistent with the grievance, (2) classification movement requests to transfer to other facilities are not grievable to the DOC, (3) more than one issue had been raised, and (4) Plaintiff was out of time because of his continued failure to properly submit the grievance. (Dkt. 31-2 at 27-30).

**Grievance No. 2018-275:** On October 4, 2018, Plaintiff submitted an RTS to Dr. Sander, stating the DCF medical department was failing to give him medication for his chronic, daily pain from having metal in his face and from having nerve damage on the right side of his body from injuries related to Case No. CF-16-8322. The RTS response advised that DCF is able to appropriately address Plaintiff's medical condition. If his pain was not improving or was becoming worse, or if he wanted to be scheduled with a provider or for a nurse evaluation, he could submit a request for health services. (Dkt. 31-2 at 39; Dkt. 31-3 at 6).

On October 15, 2018, Plaintiff submitted a grievance, complaining that the medical department would not give him the right type of medication to deal with his pain from the more than four implants in his face and from nerve damage. Plaintiff further stated he was supposed to see a specialist for his nerve damage, and he needed to see a neurologist. He asked to speak to the facility doctor and to have the doctor recommend a medical transfer. (Dkt. 31-2 at 38).

The grievance was returned unanswered on October 17, 2018, because the grievance form was not completed correctly, in its entirety, or on the proper form. The grievance also should have been addressed to Ray Larimer, the Health Services Administrator. Plaintiff was granted ten days to properly resubmit an original grievance with the noted corrections. He was advised that failure to comply with the instructions in the grievance response would constitute a waiver or forfeiture of the right to proceed in the grievance process. (Dkt. 31-2 at 36-37). Plaintiff did not resubmit as directed.

**Grievance No. 2018-309:** On October 22, 2018, Plaintiff submitted an RTS to Ray Larimer, stating he was not receiving the correct medication for his pain, and the DCF medical staff would not increase his dosage. He requested a doctor's order for a medical

transfer to another facility where prescriptions for narcotic pain medication are permitted. The RTS response stated that at Plaintiff's last provider's visit, a transfer was not indicated. Plaintiff was instructed that if he needed another evaluation, he could submit a request for health services. He also was advised that he was scheduled with a specialist for a follow-up appointment. (Dkt. 31-2 at 44).

On November 5, 2018, Plaintiff submitted Grievance 2018-309, requesting a medical transfer to another facility where he believes he can receive better medical care. (Dkt. 31-2 at 43). The grievance was returned unanswered on November 14, 2018, because Plaintiff was on grievance restriction, and proper documentation was not included. In addition, Plaintiff was out of time because of his continued failure to submit a properly filed grievance. Further, this grievance was a duplicate of Grievance No. 2018-275 that he signed for on October 22, 2018. He was given ten days to resubmit that grievance, however, he failed to do so. Because of his repeated submission of RTSs and grievances about an issue previously addressed by staff, Plaintiff was placed on Grievance Restriction on November 14, 2018. (Dkt. 31-2 at 41-42, 45).

Plaintiff alleges he was unable to exhaust his administrative remedies for his transfer, because prison staff informed him that transfers are not grievable. An administrative procedure, however, is not unavailable when it fails to provide the specific relief the inmate seeks. Rather, "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). *See also Burnett v. Oklahoma Dep't of Corr.*, 737 F. App'x 368, 372 (10th Cir. 2018).

Plaintiff also contends in his objection to the motion to dismiss (Dkt. 35) and his "motion to compel the court to obtain Plaintiff's grievances that [were] appealed to ODOC"

11

(Dkt. 56) that he exhausted his administrative remedies from August to December 2018 by appealing to the DOC. He complains that the special report omitted these appeals, however, Plaintiff has not submitted documentation of his alleged appeals to the DOC.

Defendant Yandell has submitted an affidavit by Mark Knutson, Manager of the DOC Administrative Review Authority. Yandell states that he has reviewed the ARA records for Plaintiff, and no grievances or appeals regarding any grievances Plaintiff filed at DCF between August and December 2018 have been received. (Dkt. 63-1). After careful review, the Court finds that Plaintiff has failed to exhaust the administrative remedies for his claims, and Defendant Yandell's motion to dismiss (Dkt. 31) must be GRANTED.

**Motions for Injunctive Relief**

Plaintiff has filed three motions for a preliminary injunction (Dkts. 38, 58, 64). In the first motion, he asks to be transferred to JHCC, because that facility is a medical prison which is closer to Oklahoma City, where Plaintiff goes for treatment at least once a month for his injuries related to Case No. CF-16-8322. He states the following:

1. Plaintiff has been skip [sic] on meals on a few different occasions.

2. Plaintiff has been attacked by cellmates with food trays just about two weeks ago.

3. Plaintiff has become mentally frustrated with nerve damage becoming extremely worse from the lack of movement.

4. Plaintiff has had to see defendants from CF-16-8822. The case he is the victim of right outside his door & window at rec. This is emotional distress to have to be around the defendant from case 2 out of 3 or [sic] here at DCF, and become more ill with emotional distress from physical injuries from case become worse for lack of movement.

5. Core Civic prison for profit not wanting to give up the contract on plaintiff. This is the reason Core Civic up him in security to maintain contract on plaintiff. This was a safety transfer not a disciplinary transfer. No reason to bring up old write up that ODOC didn't bother to bring up when they gave plaintiff lateral transfer to medium from NFCC to DCF.

(Dkt. 38).

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Furthermore, to be entitled to injunctive relief, the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976).

It is well settled that there is no constitutional right to incarceration in a particular correctional facility. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Although Plaintiff contends he could receive more appropriate medical treatment at another facility, "[t]he Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing." *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-06 (1976)), *cert. denied*, 474 U.S. 1076 (1986). Because Plaintiff clearly is receiving medical treatment, he is not entitled to a transfer of his choosing, and his first motion for injunctive relief (Dkt. 38) should be DENIED.

In Plaintiff's second motion for preliminary injunction, he alleges Defendant Yandell searched his cell with a K-9 dog and trashed the cell. Yandell also allegedly allowed the dog to urinate on Plaintiff's bed. Plaintiff alleges that in May, Defendant Yandell wrote up Plaintiff for cocaine when Yandell found Plaintiff's pain pills. Plaintiff contends Yandell's harassment is related to this lawsuit, however, Plaintiff has not articulated the relief he is requesting. (Dkt. 58).

The purpose of a preliminary injunction is to preserve the status quo pending the litigation of the merits. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). A preliminary injunction is appropriate to grant intermediate relief of the same character as that which may be finally granted, and relief is not proper when requested on matters lying wholly outside the issues in suit. *De Beers Consol. Mines v. U.S.*, 325 U.S.

212, 220 (1945).  To obtain preliminary injunctive relief, the party "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994); *see also Penn*, 528 F.2d at 1185 ("The burden is, of course, on the movant to establish his right to such relief.  He must do so by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.")

Here, Plaintiff has not established the relationship between the alleged injury in his second motion for an injunction and his complaint.  In fact, Plaintiff's motion for injunctive relief concerns alleged conduct entirely unrelated to his complaint.  Therefore, the Court finds that the second motion for an unspecified injunction (Dkt. 58) should be DENIED.

Finally, Plaintiff alleges in his third motion for a preliminary injunction (Dkt. 64) that on September 23, 2020, he was moved from C Pod to B Pod, next door to Anthony Durham, one of the defendants from Case No. CF-16-8322.  The Unit Manager was informed that Plaintiff and Durham had separatees on each other.  Plaintiff claims this housing situation causes him emotional distress, and they should not even be housed on the same pod.  He, therefore, again requests the Court to order his transfer to JHCC to avoid encounter with the defendants from Case No. CF-16-8322, because Durham is "in active concert with other staff here at the prison and not respecting ODOC separatees."

As explained above, Plaintiff has no constitutional right to be housed in a particular facility.  *Olim*, 461 U.S. at 245.  "The decision where to house inmates is at the core of prison administrators' expertise."  *McKune v. Lile*, 536 U.S. 24, 26 (2002) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Therefore, Plaintiff's third motion for preliminary injunction (Dkt. 64) also must be DENIED.

**ACCORDINGLY,** Plaintiff's motions for preliminary injunction (Dkts. 38, 58, 64)

are DENIED, Defendant Yandell's motion to dismiss (Dkt. 31) is GRANTED, and this action is DISMISSED in its entirety. Plaintiff's motion to compel a ruling on his motion for injunctive relief (Dkt. 57) is DENIED as moot.

**IT IS SO ORDERED** this 5th day of October 2020.

*/s/ Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma